IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JIMMIE MOORE,<br>　　　　Plaintiff,<br><br>　　　v.<br><br>DEMOCRATIC COUNTY EXECUTIVE COMMITTEE OF PHILADELPHIA, et al.,<br>　　　　Defendants. | CIVIL ACTION<br><br><br><br>NO. 14-3847 |
|---|---|

MEMORANDUM RE: DEFENDANTS' MOTION TO DISMISS

Baylson, J.                                                                                                          November 6, 2014

I.　　**Introduction**

　　Political parties, although not mentioned in the United States Constitution, are synonymous with political power.  Plaintiff alleges that his Constitutional and civil rights were violated when, after a contested election for leader of the 32nd Ward of the Democratic Party, defendants deprived him of the position, even though he won the most votes.  Accepting the truth of plaintiff's allegations, settled precedent establishes that the individual defendants cannot act under color of state law and the conduct of defendants was not state action.  Therefore, plaintiff's federal claims must be dismissed with prejudice, but the Court will decline to exercise supplemental jurisdiction over his state law claims, which can proceed in state court.

II.　　**Factual Background**[1]

　　Plaintiff Moore is a Democratic ward committee member in the 32nd Ward in Philadelphia. Compl. ¶ 2 (ECF 1). Defendants Gary Williams and Judith Robinson are also

---

[1] For purposes of deciding this motion to dismiss, the Court accepts as true all well-pleaded facts in Moore's complaint.

Democratic ward committee members in the 32nd Ward in Philadelphia. Compl. ¶¶ 4-5. The 32nd Ward was required by Democratic Party rules to hold a reorganization meeting on June 9, 2014 at 8:00 pm. Compl. ¶ 6. Williams, the incumbent ward leader, was required to notify Moore in writing of the reorganization meeting but failed to do so. Compl. ¶¶ 7-8. Nonetheless, Moore attended the meeting. Compl. ¶ 10. At the meeting, Robinson was appointed by Williams as a teller. Compl. ¶¶ 5, 11. During the meeting, someone moved "to suspend the rules to allow for proxies." Compl. ¶ 12. Williams refused to allow proxies. Id. Moore carried five valid proxies to the meeting but was not allowed to vote the proxies. Id.

In the first vote for ward leader, Moore and Williams each received 20 votes, with 5 votes going to other candidates, Donell Deans and Michael Youngblood. Compl. ¶ 13. During the vote tally, Robinson attempted to change a vote for Youngblood to a vote for Williams. Compl. ¶ 14. Her actions were discovered and this vote was disallowed. Id. In the second vote for ward leader, Moore received 22 votes and Williams received 20 votes. Compl. ¶ 15. Moore subsequently provided defendant the Democratic County Executive Committee of Philadelphia ("Democratic City Committee") with a notarized form notifying the Committee of his election as ward leader of the 32nd Ward. Compl. ¶ 16.

Sometime after the election, an election contest was allegedly filed with the Democratic City Committee, challenging Moore's election as ward leader. Compl. ¶ 17. Contrary to party rules, a written contest petition was not filed. Compl. ¶ 20. The identity of the person challenging the election and the basis for the challenge were not disclosed to Moore. Compl. ¶ 18. Moore was never served with a copy of the election contest, although the Committee Chairman notified him by telephone on June 12, 2014. Compl. ¶¶ 18, 21, 24, 25. The Democratic City Committee held a contest committee meeting on June 14, 2014. Compl. ¶ 18. The contest committee did not

allow Moore to cross examine witnesses and prevented him from hearing testimony. Compl. ¶ 26. The contest committee voted to reinstate Williams as ward leader in place of Moore. Compl. ¶ 27.

### III.  Procedural History

Moore filed his complaint on June 20, 2014, asserting four counts. Count One alleges that defendants' actions during the ward election and the contest committee violated Moore's First Amendment rights and Fourteenth Amendment right to due process. Compl. ¶¶ 29-32. Count Two alleges that defendants' actions during the ward election and the contest committee violated Moore's civil rights to due process. Compl. ¶¶ 33-36. Count Three petitions the Court for a writ of mandamus directing the Democratic City Committee and the Democratic Ward Executive Committee of the 32nd Ward of the City and County of Philadelphia to reinstate Moore as ward leader of the 32nd Ward. Compl. ¶¶ 37-41. Count Four petitions the Court for a declaratory judgment that Williams does not live within the 32nd Ward and is ineligible to be ward leader of the 32nd Ward. Compl. ¶¶ 42-45.

Defendants filed their motion to dismiss on July 4, 2014 (ECF 7), arguing that the Court lacks subject matter jurisdiction and that the Complaint failed to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(1), 12(b)(6). Plaintiff filed his response in opposition to the motion to dismiss on July 30, 2014 (ECF 8). Defendants did not file a reply.

### IV.  Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The court must accept as true

all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential–Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) "expounded the pleading standard for 'all civil actions.'" 556 U.S. at 684.

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 556 n. 3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

**V.     Discussion**

    A.     This Court has Subject Matter Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because Moore alleges deprivations of his Constitutional and civil rights. See Max v. Republican Comm. of

Lancaster Cnty., 587 F.3d 198, 199 n.1 (3d Cir. 2009) (noting that district court had jurisdiction over a claims alleging First Amendment violations). Although defendants argue that Moore's complaint should be dismissed for a lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), their argument is based on the contention that political parties are not state actors. Defs.' Memo. of Law in Support of Mot. to Dismiss, at 4-10 (ECF 7-1). In a civil rights case "where the motion to dismiss is based on the lack of state action, dismissal is proper only pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and not under Rule 12(b)(1) for lack of subject matter jurisdiction." Boyle v. Governor's Veterans Outreach & Assistance Ctr., 925 F.2d 71, 74 (3d Cir. 1991). Accordingly, the Court declines to dismiss Moore's federal law claims for lack of jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1).

      B.      <u>Moore's Allegations Fail to State a Claim Under Federal Law</u>

To state a claim for violation of 42 U.S.C. § 1983 or for violation of his First and Fourteenth Amendment rights, Moore must allege facts showing that defendants were state actors or acting "under color" of state law. 42 U.S.C. § 1983; Max, 587 F.3d at 200 ("[T]he First Amendment governs only state action, not the actions of private entities."); Benn v. Universal Health Sys., Inc., 371 F.3d 165, 169 & n.1 (3d Cir. 2004) (§ 1983 and Fourteenth Amendment claims require that defendants be state actors). The Third Circuit has established that actions by county committees of political parties, analogous to the actions alleged in Moore's complaint, were not state action. For this reason, Moore's federal law claims fail to state a claim upon which relief may be granted.

In Lynch v. Torquato registered Democratic voters in Cambria County, Pennsylvania, brought an equal protection challenge to the procedures used to select the party's county chairman. 343 F.2d 370, 370 (3d Cir. 1965). They alleged that vastly disparate numbers of

5

registered Democratic voters in different precincts deprived party members of equal protection because each precinct elected one committeeman and one committeewoman, and the county committee then elected a chairman and vice chairman. Id. at 370-71. The Third Circuit held that

> the citizen's constitutional right to equality as an elector, as declared in the relevant Supreme Court decisions, applies to the choice of those who shall be his elected representatives in the conduct of government, not in the internal management of a political party. It is true that this right extends to state regulated and party conducted primaries. However, this is because the function of primaries is to select nominees for governmental office even though, not because, they are party enterprises. The people, when engaged in primary and general elections for the selection of their representatives in their government, may rationally be viewed as the 'state' in action, with the consequence that the organization and regulation of these enterprises must be such as accord each elector equal protection of the laws. In contrast, <u>the normal role of party leaders in conducting internal affairs of their party, other than primary or general elections, does not make their party offices governmental offices or the filling of these offices state action</u> . . . .

Id. at 372 (emphasis added).

Lynch acknowledged that party chairmen, in certain situations, choose party nominees for county-wide governmental offices and exercise "a constitutionally protected function of the electorate." Id. However, the constitutional validity of such a nomination could be challenged in a case presenting those specific facts. Id. at 373-74. Without a "present threat of any violation of [plaintiffs'] asserted right to participate equally with others in the selection of party candidates for public office," the complaint was properly dismissed. Id.

In the more recent case of Max v. Republican Committee of Lancaster County, a Republican county committeewoman filed a complaint under 42 U.S.C. § 1983 alleging that the Republican Committee of Lancaster County violated her First Amendment rights by pressuring her not to support unendorsed candidates in a primary election. 587 F.3d at 199-200. The Third Circuit agreed with the district court's conclusion that, although the Committee has a role as a state actor in primary elections, that role does not make all of the Committee's actions state

actions. Id. at 202. The court held that the Committee's alleged actions were not state action and so the district court properly dismissed the complaint under Rule 12(b)(6). Id. at 203.

Applying these principles, courts in this District have declined to intervene in intra-party elections under facts that are closely analogous to the facts alleged in Moore's complaint. In McMenamin v. Philadelphia County Democratic Executive Committee of Philadelphia, the plaintiff alleged that she and her supporters were prevented from entering a ward reorganization meeting due to the actions of the incumbent ward leader and his collaborators. 405 F. Supp. 998, 999-1000 (E.D. Pa. 1975). The plaintiff received 26 votes for ward leader from the ward committee members assembled outside the designated meeting location. Id. at 1000. The incumbent ward leader held an election with his supporters on a bus and received 13 votes. Id. A contest committee convened by the Democratic County Committee decided that the incumbent ward leader had been re-elected. Id. Plaintiff alleged deprivation of her associational rights under the First and Fourteenth Amendments and deprivation of her equal protection rights under the Fourteenth Amendment. Id. at 998.

Citing the Third Circuit's decision in Lynch, the court in McMenamin held that plaintiffs' equal protection claims must be dismissed for failure to state a claim. Id. at 1003. With respect to plaintiff's associational rights and claim under § 1983, the court held that the filling of a party office "is not state action or action under color of state law" and her rights "were not abridged or impaired by state action—as opposed to the private action of party leaders conducting the internal affairs of their party." Id. at 1003. Therefore plaintiff failed to state a claim. Id. at 1004. McMenamin also discussed a Pennsylvania Supreme Court decision, Bentman v. Seventh Ward Democratic Executive Committee, 218 A.2d 261 (1966), and noted that the rationale in Bentman suggested that Pennsylvania courts would not dismiss the plaintiff's complaint. Id. at 1003.

However, the court in McMenamin concluded that Lynch was controlling and that intervention in a ward leader election was not justified where the Third Circuit had determined that "a federal court should not even intervene in the election of a party's county chairman." Id.

A court in this district reached the same conclusion in Barber v. Horsey, No. 91-cv-4265, 1991 WL 258836 (E.D. Pa. Dec. 3, 1991). In Barber, plaintiffs were elected Democratic ward committee members for the 6th Ward in Philadelphia. Id. at *1. They alleged that during the subsequent committee election for ward leader, the incumbent ward leader refused to allow the plaintiffs to vote, declared himself ward leader, and appointed other ward officers without an election. Id. Plaintiffs brought suit under 42 U.S.C. § 1983 alleging that defendants violated their civil and constitutional rights under color of state law. Id. Citing to Lynch and McMenamin, the court adopted the reasoning in McMenamin and held that the alleged actions of the defendants did not constitute state action. Id. at *1-2. Therefore plaintiffs had not stated a federal claim upon which relief could be granted. Id. at *2. The court acknowledged that the Pennsylvania Supreme Court reached a different result in Bentman, but found the state law doctrines inapposite because the plaintiffs' claims were presented under the court's federal question jurisdiction, not its diversity jurisdiction. Id.

In addition to the decisions of the Third Circuit and courts within this District, the Sixth Circuit has also found a lack of state action in an intra-party election for party committee officials. In Banchy v. Republican Party of Hamilton County, four newly elected Republican precinct executives sought attorney's fees after settling a suit filed under 42 U.S.C. § 1983 that alleged they were denied the right to participate in ward chairman elections. 898 F.2d 1192, 1193 (6th Cir. 1990). The Sixth Circuit held that "the defendants did not act under color of state law." Id. at 1194. Although Ohio state law delegated party committees the power to appoint certain

county officials when vacancies occurred, "this does not mean that all actions of a central committee constitute state action." Id. Instead, "[w]hen engaging in party activities, such as electing ward chairmen, distinct from their official governmental duties, the members of the Central Committee do not continue to act under color of state law merely because they have some governmental duties." Id. at 1195. To act under color of state law "[t]here must be some allegation that the activities directly influence the governmental duties." Id. As such, the court held that "[a]bsent some credible allegation that ward chairmen engage in a governmental function, the Republican Party is not subject to suit under section 1983 for irregularities in its internal ward chairmen elections." Id. at 1196.

The legal and factual bases for Moore's claims in Counts One and Two are indistinguishable from the claims that were dismissed in Max, Lynch, McMenamin, Barber, and Banchy. Moore's factual allegations relate solely to decisions about how to fill the party office of ward chairman through intra-party elections and dispute resolution mechanisms. But filling a party office is "not state action or action under color of state law" and so Moore's rights "were not abridged or impaired by state action—as opposed to the private action of party leaders conducting the internal affairs of their party." McMenamin, 405 F. Supp. at 1003. For this reason, Counts One and Two of Moore's complaint must be dismissed for failure to state a claim.[2]

---

[2] Political parties also enjoy important Constitutional rights. "The freedom of association protected by the First and Fourteenth Amendments includes partisan political organization." Tashjian v. Republican Party of Conn., 479 U.S. 208, 214 (1986). This freedom of association "encompasses a political party's decisions about the identity of, and the process for electing, its leaders." Patriot Party of Allegheny Cnty. v. Allegheny Cnty. Dep't of Elections, 95 F.3d 253, 259 (3d Cir. 1996) (quoting Eu v. San Francisco Cnty. Democratic Cent. Comm., 489 U.S. 214, 229-30 (1989)). Although not dispositive here, these rights further caution against state or judicial oversight of a political party's internal affairs. Moore's status as an individual seeking redress against a political party for alleged Constitutional violations readily distinguishes this

Against the weight of the Third Circuit's precedents and prior decisions from courts of this District, Moore relies primarily on the Pennsylvania Supreme Court's decision in Bentman to contend that defendants' actions were state actions or taken under color of state law. Pl.'s Reply to Defs.' Motion to Dismiss, at 5-7 (ECF 8). In Bentman, the Pennsylvania Supreme Court held that political party actions denying committee membership to duly elected members amounted to a state action subject to judicial review in state court. 218 A.2d at 263, 266-69. Bentman involved two duly elected Democratic ward committee members in the 7th Ward in Philadelphia who were ousted from their ward committee by a vote of the committee. Id. at 263. The Bentman court noted that Pennsylvania statutory law recognizes District Committees and that party committees sometimes play a role in nominating candidates for public office and consulting on emergency appointments to fill vacancies in the legislature and judiciary. Id. at 264-65. It further reasoned that membership on a party committee is an important right and privilege, both for the committee members themselves and for the voters who elected the committee members to represent them. Id. at 269. Committee membership "carries with it the right to participate in selection of the political body which, under the legislative direction, in certain instances, selects the party nominees for public office, an activity clearly constituting state action under the 14th Amendment." Id. Thus, "[d]eprivation of such membership and the concomitant right of participation in the selection of public officers bears such a Direct and Substantial relationship to the electoral process as to be a matter of judicial concern." Id. The court held that "[t]o the extent that the instant action of the Executive Committee bears a relationship to the state action inherent in the selection of party nominees for public offices, such

---

case from Tashjian, Patriot Party, and similar cases that considered a political party's right to seek redress against the state for alleged Constitutional violations related to participation in state-sponsored primary or general elections. See, e.g., Tashjian, supra; Constitution Party of Pa. v. Aichele, 757 F.3d 347 (3d Cir. 2014); Patriot Party of Allegheny Cnty., supra.

action may be tested in the judicial area to determine whether the action of the Executive Committee denying membership on the Committee to the chosen representatives of the party electorate offends against the constitutional provision mandating due process in state action." Id.

The reasoning and holding in Bentman cannot save Moore's claims. The reasoning of Bentman relied heavily on the linkages between party committees and the state action of selecting public officials. 218 A.2d at 269. But, considering similar circumstances, the Third Circuit in Lynch held that "the normal role of party leaders in conducting internal affairs of their party . . . does not make their party offices governmental offices or the filling of these offices state action" and that there is no jeopardy to party members' constitutional rights when they did not allege that party officials' actions threatened to violate their right "to participate equally with others in the selection of party candidates for public office." 343 F.2d at 372, 373-74. To the extent the holdings in Bentman and Lynch diverge, this Court is bound by the Third Circuit's decision in Lynch. Barber, 1991 WL 258836, at *2; McMenamin, 405 F. Supp. at 1003-04.

Moore also seeks support from the Third Circuit's decision in Max, quoting language that "[a]lthough there may well be situations where the actions of a political party in a primary election are deemed to be state action, defendants' alleged actions do not present such a situation." Pl.'s Reply to Defs. Motion to Dismiss, at 5 (quoting Max, 587 F.3d at 203). However, as described above, Max dismissed the plaintiff's First Amendment claim for failure to allege state action. 587 F.3d at 203. In so doing, the Third Circuit reaffirmed the principle that a party committee's role as a state actor in primary elections does not make all of its internal actions into state actions. Id. at 202. If anything, the facts that Moore has alleged are further removed from a political party's actions in conducting a primary election than the allegations dismissed in Max. Moore alleges no connection to a primary election whatsoever whereas the

11

Max plaintiff alleged that her First Amendment rights were infringed during a primary election campaign. Id. at 199-200. Comparing these facts, there is no reason to believe that the Third Circuit would find state action here when it did not find state action in Max. Id. at 203.

For the foregoing reasons, the Court concludes that Counts One and Two of Moore's complaint must be dismissed with prejudice. See McMenamin, 405 F. Supp. at 1004; Barber, 1991 WL 258836 at *3.

### C. The Court Declines to Exercise Supplemental Jurisdiction Over Moore's State Law Claims

The remaining counts of Moore's complaint are a petition for a writ of mandamus and a petition for declaratory judgment, both of which are grounded in state law. Moore's petition for a writ of mandamus cites exclusively to Pennsylvania statutes and to the Pennsylvania Supreme Court's decision in Bentman, 218 A.2d at 263 & n.2, which interpreted mandamus actions in state court.[3] Compl. ¶¶ 37-41. Likewise, Moore's petition for declaratory judgment cites only to Pennsylvania statutes.[4] Compl. ¶¶ 42-45. The Court therefore concludes that Counts Three and Four are based on state law, not federal law.

---

[3] Alternatively, if Moore intended Count Three to incorporate federal law, it must be dismissed for failure to state a claim for the same reasons that the Court is dismissing Counts One and Two. Moore has not identified any duty owed to him under federal law that the Court could order to be performed.

[4] Even if Moore intended Count Four to rely implicitly on the federal Declaratory Judgment Act, 28 U.S.C. § 2201, the Court would still dismiss Count Four for two reasons. First, Count Four alleges that defendant Williams does not live within the 32nd Ward and seeks a declaratory judgment that he is ineligible to be ward leader. However, the Complaint does not allege any facts regarding the geographical limits of the 32nd Ward, so Moore has failed to plead sufficient facts to state a claim that Williams lives outside the ward. The complaint also lacks any reference to any legal authority that requires ward leaders to live within the ward they represent. These pleading deficiencies would require the Court to dismiss Count Four without prejudice under Rule 12(b)(6) if it were a federal law claim. Second, the federal Declaratory Judgment Act is procedural and is not an independent basis for federal jurisdiction, so this action cannot proceed as a declaratory judgment action alone. See Luis v. Dennis, 751 F.2d 604, 607 (3d Cir. 1984)

The Court declines to exercise supplemental jurisdiction over Moore's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . [if] the district court has dismissed all claims over which it has original jurisdiction."); *see also* Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). Given the Pennsylvania Supreme Court's decision in Bentman, it is possible that Moore may be able to assert a cognizable claim under Pennsylvania law, but that determination is best left to the state courts. Therefore Counts Three and Four of Moore's complaint will be dismissed without prejudice.

## VI. Conclusion

For the foregoing reasons, the Court holds that Counts One and Two related to violations of Moore's rights under 42 U.S.C. § 1983 and the First and Fourteenth Amendments must be dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Moore's remaining state law claims so Counts Three and Four will be dismissed without prejudice.

An appropriate order follows.

O:\CIVIL 14\14-3847 moore v. democratic cty\Memorandum re Motion to Dismiss - 2014-11-04.docx

---

(noting the Declaratory Judgment Act is "procedural in nature" and does not itself confer jurisdiction); Queen City Pizza, Inc. v. Domino's Pizza, Inc., 922 F. Supp. 1055, 1063-64 (E.D. Pa. 1996) (dismissing declaratory judgment and state law claims after concluding that the plaintiffs' federal antitrust claims must be dismissed and finding no basis for diversity jurisdiction) aff'd, 124 F.3d 430 (3d Cir. 1997).